E. Dillingham, Inc., v. United States          (No. 5028)[1]

Salentine and Company, Inc. v. United States   (No. 5030)

United States Court of Customs and Patent Appeals, Nov. 17, 1960

*Wood, Werner, France & Tully,* (*James H. Tully,* of counsel) for E. Dillingham, Inc.

*Gilbert and Segall,* (*Phil E. Gilbert, Jr.,* of counsel) for Salentine and Company, Inc.

*George S. Leonard,* Acting Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Samuel D. Spector,* trial attorney, of counsel) for the United States.

Before Worley, Chief Judge, and Rich, Martin, and Smith, Associate Judges, and Judge William H. Kirkpatrick.[2]

Smith, Judge, delivered the opinion of the court:

These appeals, which have been consolidated, were taken by E. Dillingham, Inc. and Salentine and Company, Inc., respectively, from judgments of the United States Customs Court, Second Division (C.D. 2130 and C.D. 2129 respectively), overruling appellants' pro-

[1] C.A.D. 762.

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

tests. The imported merchandise in each case is known as Cobalt-60 beam therapy equipment, and was classified by the collector as electrical therapeutic apparatus under the provisions of paragraph 353 of the Tariff Act of 1930, rather than as electrical X-ray apparatus under the same paragraph, as contended for by the appellants.

The pertinent statutory provisions are as follows:

Paragraph 353 of the basic act:

All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy;

electrical telegraph (including printing and typewriting), telephone, signaling, radio, welding, ignition, wiring, therapeutic, and X-ray apparatus, instruments (other than laboratory), and devices; and

articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

Paragraph 353, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802:

Electrical apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

Telegraph (including printing and typewriting), telephone, and therapeutic (including diagnostic) _____ 17½% ad val.

\*    \*    \*    \*    \*

X-ray_____ 10% ad val.

Paragraph 353, as modified by the Torquay Protocol to said General Agreement, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential notification thereto, 86 Treas. Dec. 265, T.D. 52763:

Electrical X-ray apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal and not specially provided for (except X-ray tubes) _____ 8¾% ad val.

The equipment here involved is designed for therapeutic use in the treatment of cancer. The equipment comprises a head having a lead-lined chamber in which radioactive cobalt 60 is contained. The chamber has a manually adjustable aperture opened and closed by a shutter operated, presumably hydraulically, by an electric pump (but which may be operated manually if necessary). In some models, the head is supported on a counterbalanced electrically driven movable arm which is designed to permit the head to be selectively positioned with respect to a treatment table on which the patient rests. By adjusting the relative positions of the table and the head, a preselected treatment area of the patient will be exposed to the rays released through the adjusted aperture when the shutter is opened. The treatment table is adjusted manually in certain units. In others it is adjusted by electrically actuated means.

The principal issue here is whether such cobalt 60 beam therapy equipment is "electrical X-ray apparatus" within the meaning of paragraph 353 of the 1930 Tariff Act as modified.

The equipment cannot be X-ray apparatus within the meaning of paragraph 353 unless it generates, or applies, X-rays as that term is used in paragraph 353. In making this determination, reference must be had to the meaning of the term "X-ray" as that term was understood in 1930, since ▮ it is well settled that although tariff acts are made for the future in the sense that they embrace later designed articles or machines coming within the definitions set up in the act, the meaning of such definitions is that prevailing when the act was passed. *Davies Turner & Co.* v. *United States*, 45 CCPA 39, C.A.D. 669, and cases cited.

It follows that the very substantial portion of the instant record which relates to the alleged meaning of the term "X-ray" some years after the passage of the 1930 Act is not controlling here and need not be specifically considered.

It is clear from the record that the rays which emanate from radium and radioactive cobalt 60 are gamma rays, and the issue here is whether at the time of the passage of the Tariff Act of 1930 gamma rays were generally considered to be X-rays.

The pertinent testimony on that point is as follows:

Dr. Edrie Dale Trout, a witness for Salentine and Company, Inc., testified:

Q. Dr. Trout, I wonder if you could tell us whether or not there was any distinction drawn to your knowledge, in and about the year 1930 between the two terms gamma rays and X-rays?

A. Yes, sir, because in 1930, the highest energy X-ray equipment that was generally available to the radiologist for the treatment of cancer operated at 200,000 volts, and a machine of this voltage did not produce the short wave volts [sic] available from radium.

\* \* \* \* \* \* \*

XQ. Nevertheless they had two distinct names, one is X-ray and the other one is radium? A. yes, sir.

\* \* \* \* \* \* \*

XQ. How far did they have different meanings? A. Until about 1931 to 1934.

XQ. They had different meanings at the time in June 1930, is that correct? A. I would say so.

\* \* \* \* \* \* \*

XQ. What is your definition of a gamma ray?

A. A gamma ray in terms of 1930 was something produced from radium.

Dr. Martin A. Edwards, a witness for Salentine and Company, Inc., agreed with the following quotation from a book published in 1954:

Historically gamma rays provided much higher-energy radiation than could be obtained from the early X-ray tubes and it used to be said that gamma rays were similar to X-rays but of greater energy. Present-day accelerators, how-

ever, produce X-rays of the order of 100-Mev energy, which is far beyond the gamma-ray energies associated with radioactive decay.

In view of the foregoing and our consideration of the entire record we conclude that, regardless of what may be the *present* understanding, it was generally understood in 1930 that gamma rays, although similar in many respects to X-rays, were quite distinct therefrom. Accordingly, apparatus which produced or applied gamma rays would not in 1930 have been considered X-ray apparatus. It follows, therefore, that the cobalt 60 equipment here involved does not fall within the *eo nomine* provision for electrical X-ray apparatus in paragraph 353.

Appellants assert, however, that the term X-ray apparatus as used in the Tariff Act of 1930 should be read as of 1951, the date of the Torquay Protocol, since it is asserted that this date is the date of the last usage of the term "X-ray apparatus" which appellants urge as having "Congressional acquiescence."

The General Agreement on Tariffs and Trade did not modify or change the classification of X-ray apparatus as used in paragraph 353 of the tariff act but merely modifies the duties as to merchandise already comprehended by that paragraph. *United States* v. *Curley-Bates Co.*, 46 CCPA 14, C.A.D. 688.

Our review of the Torquay Protocol convinces us that the only changes which it affected were 1) to exclude the X-ray tubes per se, and 2) to reduce the duty on the remaining X-ray apparatus to $8\frac{3}{4}\%$. We do not find either in the Torquay Protocol or in the State Department analysis of it anything which bears upon or modifies the meaning of the term "X-ray apparatus" as used in the 1930 Tariff Act. The basic act when read in the light of the testimony of the witnesses here indicates that in 1930 a distinction was recognized between gamma rays and X-rays and the means for producing the same. Appellants have not discharged their burden of proof on this issue.

It is urged that if the instant equipment is not electrical X-ray apparatus, it should nevertheless be classified, by similitude, under the provision for such apparatus. Such a classification, however, is not proper if the equipment is provided for *eo nomine* elsewhere.

The controlling *eo nomine* provision is electrical therapeutic apparatus, in paragraph 353, where the equipment was classified by the collector. It is true that the therapeutic effect of the equipment is not electrically produced, but paragraph 353 does not require this. It is sufficient if the equipment is both electrical and therapeutic apparatus. We think the equipment satisfies this language of the paragraph. It may be as was testified by Dillingham's witness, Dr. Bierman, that treatment by cobalt 60 equipment would not be considered as "electrotherapy," but paragraph 353 does not employ that term.

It is to be noted also that the provision of paragraph 353 under which both appellants claim is for "Electrical apparatus, X-ray," and

that the rays produced by the cobalt 60 equipment are not electrically generated. Appellants rely on the electrical operation of the shutter, the machine arm, and table to bring the equipment under that provision. It would appear that, if sufficient for that purpose, such operation would be equally effective to bring the equipment under the provision for electrical therapeutic apparatus.

The judgments of the United States Customs Court are *affirmed*.